UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| F.G. CROSTHWAITE, et al.,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br>LEGG, INC., a California corporation;<br>ROBERT PAUL LEGG II, an individual; and<br>LEONARD ANTHONY D'ORAZIO *aka*<br>SKIP D'ORAZIO, an individual,<br><br>　　　　　　　　Defendants. | No. C 13-01065 LB<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF No. 23] |

**INTRODUCTION**

In this action Plaintiffs are employee benefits plans for operating engineers and other covered employees in the construction industry, the trustees of those plans, and a labor union. Complaint, ECF No. 1 ¶ 1.[1] They have sued Legg, Inc. and its owners Robert Paul Legg II and Leonard Anthony D'Orazio (collectively "Defendants"), for failing to pay employee fringe benefits in violation of the parties' Collective Bargaining Agreements (the "CBAs"), the agreements establishing the benefit plans (the "Trust Agreements"), the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"),

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 13-01065 LB
ORDER RE DEFAULT JUDGMENT

Pub. L. No. 93-406 (codified in part at 29 U.S.C. § 1002 *et seq.*).  *See* Complaint, ECF No. 1. Plaintiffs seek a default judgment against Legg, Inc. and Mr. D'Orazio.[2]  Motion for Default Judgment, ECF No. 23.  The district court referred the matter to the undersigned for a report and recommendation.  Order of Referral, ECF No. 26.  Following a hearing on March 6, 2014, and upon consideration of the papers submitted, the undersigned finds that (a) Plaintiffs established subject-matter and personal jurisdiction, and (b) the factors in *Eitel v. McCool* favor entry of default judgment against Legg, Inc. and Mr. D'Orazio.  For the reasons stated below, the court **RECOMMENDS** that the district court grant Plaintiffs' motion and enter default judgment against Legg, Inc. and Mr. D'Orazio in the amount of $94,294.91.

## STATEMENT

The employee benefit plans are: the Operating Engineers' Health and Welfare Trust Fund; the Pension Trust Fund for Operating Engineers; the Pensioned Operating Engineers' Health and Welfare Fund; Operating Engineers and Participating Employers Pre-apprenticeship, Apprentice and Journeymen Affirmative Action Training Fund; and the Heavy and Highway Committee (collectively, the "Trust Funds").  Complaint ¶ 1.  They are organized pursuant to the LMRA, and the trustees of the Trust Funds—F.G. Crosthwaite and Russell E. Burns—are fiduciaries of multiemployer benefit plans within the meaning of ERISA.  *Id.*; Russell Declaration, ECF No. 24 ¶ 2; *see* Hayner Declaration, ECF No. 25 ¶ 1.  Each of the Trust Funds is a third-party beneficiary of the CBAs described below.  Complaint ¶ 10.  Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO (the "Union") is a labor organization as defined in § 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5), and is represented by counsel for the limited purpose of collecting union dues owing as part of the subject contribution claims of Plaintiffs, and not for any other claim fo relief.  *Id.* ¶ 2.

Legg, Inc., a California corporation with its principal place of business in Livermore, California, is an employer engaged in an industry or activity affecting commerce within the meaning of

---

[2] Plaintiffs explicitly state that they do not seek default judgment against Mr. Legg as he has filed for bankruptcy.  Motion, ECF No. 23 at 1 n.1.

1  Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(2), 1145, and Section 301 of the LMRA, 29
2  U.S.C. § 185. *Id.* ¶ 3. Mr. Legg is Legg, Inc.'s President and Owner. *Id.* Mr. D'Orazio is Legg
3  Inc.'s Chief Financial Officer and Owner. *Id.* Both Mr. Legg and Mr. D'Orazio make direct
4  payment of contributions to the Trust Funds, and under the Independent Northern California
5  Construction Agreement (the "Independent Agreement"), they also have individual liability for all
6  amounts claimed by Plaintiffs. *Id.*; *see* Hayner Declaration, Ex. A (Independent Agreement), ECF
7  No. 25-2 at 1-3.

8  On March 7, 2011, Defendants entered into the Independent Agreement with the Union, *see*
9  Hayner Declaration, Ex. A, ECF No. 25-2 at 1-3, which incorporates the Master Agreement between
10 the Union and the Associate General Contractors of California ("Master Agreement"), *see id.* ¶ 2 &
11 Ex. B (Master Agreement), ECF No. 25-2 at 4-7. The Independent Agreement and the Master
12 Agreement, which together are the CBAs at issue here, require Defendants to provide employer
13 contributions to the Trust Funds, to the Union for union dues, and to the other plans referenced in
14 the Master Agreement. *See id.*, Exs. A, B. From May 7, 2011 through June 20, 2013, Defendants
15 were signatories to the CBAs, and they continue to be signatories until they or the Union gives
16 notice to the other to terminate sixty to ninety days prior to the CBAs' expirations. *Id.* ¶ 3, Ex. A.
17 No such notice has been given. *Id.* ¶ 3.

18 The CBAs require Defendants to make contributions to the Trust Funds based on the hours
19 worked by Defendants' employees. *Id.* ¶ 4, Ex. B. In addition, the CBAs incorporate the terms of
20 the Trust Agreements establishing the various Trust Funds, which also require Defendants to pay
21 benefit contributions to the Trust Funds. *Id.*, Ex. C (pages of the Seventeenth Amendment to the
22 Trust Agreement Establishing the Pension Trust Fund for Operating Engineers), ECF No. 25-2 at 8-
23 10. Defendants also have a statutory duty to timely make required payments to the Trust Funds
24 under ERISA. Complaint, ECF No. 1 ¶ 15; *see also* 29 U.S.C. § 1145. The CBAs and Trust
25 Agreements provide that all benefit contributions are due on or before the fifteenth day of the month
26 following the month in which hours were worked and are delinquent if not received by the twenty-
27 fifth day of that month. Hayner Declaration ¶ 5, Exs B, C.

28 In the event that Legg, Inc. fails to make the monthly installments on or before the twenty-fifth

day of the month in which the contributions are due, it is subject to interest at the rate of 10% per month, as well as liquidated damages of 10% for each month that the contribution is delinquent. *Id.* ¶¶ 5-6, Exs. B, C. However, if the matter is referred to legal counsel to collect, liquidated damages are calculated at 20% of the delinquent contributions reported. *Id.*

On March 8, 2013, Plaintiffs filed a complaint against Defendants for failing to pay required employee benefits. *See generally* Complaint. They bring claims against Defendants for (1) Breach of Collective Bargaining Agreement, (2) Recovery of Unpaid Trust Fund Contributions, and (3) Mandatory Injunction. *See* Complaint ¶¶ 15-20. In essence, they allege that Defendants failed to pay benefits as required, and that Defendants also failed to pay the resulting interest and liquidated damages, too. *See id.* Specifically, Plaintiffs allege that Defendants breached the CBAs in the following ways:

A. By reporting, but failing to pay $53,383.70 in employee benefit contributions for the period from August 2012 through April 2013, and by failing to pay $12,850.74 in liquidated damages and $5,477.31 in interest for the same period. *See* Hayner Declaration ¶ 10. These amounts, which shall be referred to as the "Reported, Not Paid Contributions, Interest, and Liquidated Damages," total $71,711.75. *See id.*

B. By failing to pay $9,920.84 in liquidated damages and $209.27 in interest incurred on employee benefit contributions for the period of May through July 2012 that were paid, but paid late. *See id.* ¶ 11. These amounts, which shall be referred to as the "Late Contributions," total $10,130.11. *See id.*

Plaintiffs served each Defendant with a complaint and summons. Proofs of Service, ECF Nos. 9, 10, 12. None of them answered or otherwise responded to it. *See generally* Docket. Thus, upon Plaintiffs' request, Request for Entry of Default, ECF No. 14, the Clerk of Court entered Defendants' default on July 5, 2013, Entry of Default, ECF No. 15. Defendants were served with the Clerk's Notice of Entry of Default, and they still did not appear. Proof of Service, ECF No. 16. Plaintiffs thereafter filed the instant motion for default judgment against Legg, Inc. and Mr. D'Orazio. Motion for Default Judgment, ECF No. 23. Plaintiffs served the motion on them by mail. *Id.* at 22. Defendants have not opposed it. *See generally* Docket. On January 17, 2014, the

Honorable Jeffrey S. White, the presiding judge in this matter, referred Plaintiffs' motion to the undersigned for a report and recommendation. Order of Referral, ECF No. 26. The court held a hearing on Plaintiffs' motion on March 6, 2014. 3/6/2014 Minute Order, ECF No. 34. Only Plaintiffs appeared at it. *Id.*

## ANALYSIS

### I. THE COURT HAS JURISDICTION OVER THIS MATTER AND DEFENDANTS

Before entering default judgment, a court must determine whether it has jurisdiction over defendants. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### A. Subject-Matter Jurisdiction

District courts have original jurisdiction to hear civil cases arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiffs allege two claims: (1) collection of unpaid contributions to employee benefit plans pursuant to 29 U.S.C. § 1332(g)(2)(A); and (2) enforcement of a collective bargaining agreement under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Thus, this court has subject-matter jurisdiction because both claims arise under federal law. 28 U.S.C. § 1331(a).

#### B. Personal Jurisdiction

As the party seeking to invoke this court's jurisdiction, Plaintiffs bear the burden of establishing that this court has personal jurisdiction over Defendants. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Here, the court may exercise personal jurisdiction over Legg, Inc. because it is a California Corporation, as well as Mr. Legg and Mr. D'Orazio because they are citizens of California, and all Defendants are employers by virtue of ERISA § 3(5), 29 U.S.C. § 1002(5), and National Labor Relations Act ("NLRA") § 2(2), 29 U.S.C. § 152(2). Complaint, ECF No. 1 ¶ 3. Therefore, the court has personal jurisdiction over Defendants.

### II. MR. D'ORAZIO IS PERSONALLY LIABLE

Plaintiffs seek default judgment against Mr. D'Orazio as an individual. He is personally liable for Legg, Inc.'s delinquent contributions based on the Independent Agreement. *See* Hayner Declaration ¶ 8, Ex. A, ECF No. 25-2 at 1 (Section 1, Paragraph 12). In the Independent

1 Agreement, Mr. D'Orazio agreed, as a principal shareholder of Legg, Inc., to "personally guarantee
2 all payment of wages and fringe benefits, including fringe benefit contributions, liquidated damages,
3 interest and collection costs." *Id.* Therefore, he is contractually and personally liable for all
4 contributions and related amounts owed to the Plaintiffs.

## III.  ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for—and the court may grant—a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986).  Default judgments are generally disfavored because "cases should be decided on the merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court must consider the following factors when deciding whether to use its discretion to grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*. at 1471-72. These factors weigh in favor of default judgment against Legg, Inc. and Mr. D'Orazio.

### A.  Merits and Sufficiency (prongs two and three of the *Eitel* test)

After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  The court is not required to make detailed findings of fact. *Id*.  Default judgment cannot exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

In their motion, Plaintiffs appear to seek default judgment with respect to their first and second claims only.  Plaintiffs' third claim seeks a mandatory injunction allowing them access to Legg, Inc.'s books and records to determine the amount of contributions due and owing, but Plaintiffs, through their motion, appear to be seeking damages only. *See* Motion for Default Judgment, ECF No. 23 at 7-8; Proposed Order, ECF No. 23-1.  Thus, the court addresses only Plaintiffs' first and second claims for damages.

*1. Breach of the CBAs under 29 U.S.C. § 185(a)*

29 U.S.C. § 185 permits Plaintiffs to sue for breaches of a collective bargaining agreement. Federal courts apply federal common law principles to determine the enforceability of contract provisions like liquidated damages provisions. *See Idaho Plumber & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 214-18 (9th Cir. 1989). Plaintiffs' complaint sufficiently alleges a contractual obligation to make contributions and a breach of that obligation. *See* Complaint ¶¶ 16-20.

*2. Recovery of Unpaid Trust Fund Contributions under 29 U.S.C. §§ 1132(g)(2) and 1145*

29 U.S.C. § 1145 provides, "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 1145 thus creates a claim against employers who do not make timely contributions as required under a collective bargaining agreement. *See Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA Inc.*, 572 F.3d 771, 774-76 (9th Cir. 2009); *Bd. of Trs. v. RBS Washington Blvd. LLC*, No. C 09-06660 WHA, 2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010). Plaintiffs here must prove the following: (1) the plans are multiemployer plans as defined by 29 U.S.C. § 1002(37), (2) the CBAs obligated Legg, Inc. to make the disputed contributions; and (3) Legg, Inc. did not make the required contributions. 29 U.S.C. § 1145; *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of Northern California v. Gevasio Envtl. Sys.*, No. C 03-4858 WHA, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

Plaintiffs' complaint contains sufficient facts establishing the elements of the claim: the trusts are multiemployer benefit plans within the meaning of ERISA; the CBAs required Legg, Inc. to make contributions to the plans; Mr. D'Orazio personally guaranteed payment of contributions; and Legg, Inc. did not make the required contributions. *See* Complaint ¶¶ 15-20. Plaintiffs also provide evidence detailing both the contributions, liquidated damages, and interest owed. *See* Hayner Declaration ¶ 10. These two *Eitel* factors weigh in favor of granting default judgment.

**B. The Remaining *Eitel* Factors**

The remaining *Eitel* factors also weigh in favor of granting default judgment.

*1. The Possibility of Prejudice to Plaintiffs*

If the motion is not granted, Plaintiffs have no recourse to enforce the terms of the agreement requiring Legg, Inc. to make plan contributions and pay liquidated damages and interest. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

*2. The Possibility of a Dispute concerning a Material Fact*

Defendants were served with the complaint, summons, the Clerk's Notice entering their default, and Plaintiff's motion for default judgment. Nevertheless, they have failed to appear in this action. Thus, there is no indication that there might be a disputed issue of material fact. Moreover, the issues are straightforward: whether Legg, Inc. failed to make timely contributions as required by the CBAs, and what the damages are.

*3. Excusable Neglect*

There is no indication that Defendants' failure to participate in this proceeding is due to excusable neglect. In fact, the record establishes that Defendants were aware of Plaintiffs' action against them as Plaintiffs received a letter from Mr. D'Orazio's attorney acknowledging that Mr. D'Orazio was served with the complaint and inquiring into the possibility of a settlement/payment plan. *See* Russell Declaration ¶ 8.

*4. The Sum of Money at Stake in the Action*

When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three million dollar judgment, considered in light of parties dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *RBS Washington*, 2010 WL 145097, at *3 (*citing Eitel*, 782 F.2d at 1472). The amounts sought here generally are modest and reasonable, and they are required by both the CBAs and 29 U.S.C. §1132. *See Northwest Administrators, Inc. v. Albertsons, Inc.*, 104 F.3d 253, 257-58 (9th Cir. 1996). This factor does not disfavor entry of default judgment in this case.

*5. The Strong Policy in the Federal Rules that Favors Decisions on the Merits*

When determining granting a default judgment, the court must consider the strong policy of the federal courts in favoring decisions on the merits. This policy, however, is not dispositive; rather,

1  the court still has great latitude in exercising its discretion with regards to the relative weight of the
2  remaining *Eitel* factors. *PepsiCo,* 238 F. Supp. 2d at 1177.  Despite the policy of favoring decisions
3  on the merits, default judgment is appropriate when a defendant refuses to litigate a case.  Fed. R.
4  Civ. P. 55(b); *see RBS Washington*, 2010 WL 145097, at *4.  Thus, default judgment against Legg,
5  Inc. and Mr. D'Orazio is appropriate as they have failed to participate in the proceeding brought
6  against them, despite adequate notice and opportunity to do so.

## IV.  RELIEF SOUGHT

Under the CBAs and ERISA, when contributions are unpaid, Plaintiffs may recover the following: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs; and (5) such other legal or equitable relief the court deems appropriate.  29 U.S.C. § 1132(g)(2).

For the breach of contract claim for damages, the district court applies federal contract law to determine whether the liquidated damages are reasonable.  *See Idaho Plumbers*, 875 F.2d at 214-18.  Liquidated damages must meet two provisions: (1) the harm caused by the breach of contract must be difficult or impossible to estimate; and (2) the amount of liquidated damages must be a reasonable forecast of compensation for the harm caused.  *Id.*; *United Order of American Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.,* 519 F. 2d 331, 337 (9th Cir. 1975) (upholding liquidated damages provision in collective bargaining agreement of 10 percent of unpaid contributions).

For the claim for damages under 29 U.S.C. § 1132(g)(2), Plaintiffs must prove their entitlement to relief through written declarations and fulfill the following three requirements: (1) the defendant must be delinquent in its contributions at the time the action is filed; (2) the district court must enter judgment against the defendant; and (3) the plan must provide for the damages sought.  *Northwest Administrators*, 104 F.3d at 257-58; *Idaho Plumbers*, 875 F.2d at 215.  If these requirements are met, an award of contributions, liquidated damages, and reasonable attorney's fees and costs is mandatory.  *Northwest Administrators*, 104 F.3d at 257-58; *RBS Washington*, 2010 WL 145097, at *3.  The specific award under 29 U.S.C. § 1132(g)(2) is as follows: (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of the interest on the unpaid

contributions or liquidated damages as specified in the plan (generally not to exceed 20% of the unpaid contributions); (D) reasonable attorney's fees and costs; and (E) appropriate equitable relief. *See* 29 U.S.C. § 1132(g)(2).

The court now turns to Plaintiffs' requested relief.

**A. Reported, Not Paid Contributions, Interest, and Liquidated Damages**

As Plaintiffs describe in their motion, and as the documents submitted demonstrate, Legg, Inc. failed to pay all of the contributions on behalf of its covered employees from August 2012 through April 2013. *See* Hayner Declaration ¶ 9. The unpaid principal contributions total $53,383.70. *Id.* ¶ 10.

Furthermore, pursuant to the terms of the CBAs, Legg, Inc. is subject to interest at the rate of 10% per annum calculated from the day contributions are considered delinquent, as well as liquidated damages, calculated at 10% on the assessed funds, which are part of the delinquent contributions; however, if the matter is referred to legal counsel for collection, liquidated damages are calculated at 20% of the delinquent contributions reported, each month that the contribution is delinquent. *Id.* ¶ 6, Ex. B (Master Agreement), ECF No. 25-2 at 7; *id.*, Ex. C (Amended Trust Agreement –- Establishing the Pension Trust Fund), ECF No. 25-2 at 8-10. Calculated at 10% per month from the month in which each delinquent contribution for each Trust Fund was recorded and accumulated, the interest Defendants owe through January 2014 a total in the amount of $5,477.31. *See id.* ¶ 10.[3]

In addition, pursuant to 29 U.S.C. § 1132(g)(2)(c), Plaintiffs are entitled to an additional award

---

[3] The court finds specifically that both conditions under *Idaho Plumbers* exist for enforcing the liquidated damage provision: (1) the harm caused by the breach of contract is difficult or impossible to estimate, and (2) the amount of liquidated damages is a reasonable forecast of compensation for the harm caused. *See Idaho Plumbers*, 875 F.2d at 214-18. As to the first factor, costs are spread across different trust for different benefits like health, pension, vacation and other benefits. Damage to labor-management harmony also results when an employer fails to comply with long-negotiated provisions in collective bargaining agreements. *See United Order of American Bricklayers*, 519 F.2d at 332 (finding these facts persuasive). As to the second factor, the court recognizes that Defendants ultimately made payments. Still, different trusts are affected, and the $150 flat fee is relatively small compared to the size of the contributions involved. Thus, the court concludes that the liquidated damages provision of the trust agreement is reasonable.

1  of liquidated damages at a maximum level of 20% of the unpaid contribution levied for delinquent
2  payments if the following requirements are satisfied: (1) the employer is delinquent at the time the
3  action is filed; (2) the district court enters a judgment against the employer; and (3) the plan provides
4  for such an award. *Plumbers & Pipefitters Nat'l Pension Fund v. Eldridge*, 232 Fed. Appx. 680, 683
5  (9th Cir. 2007).

6  Here, Plaintiffs have alleged that Defendants failed to make contributions at the time the
7  complaint was filed and also that the CBAs contemplated an award of liquidated damages. Plaintiffs
8  provided detailed charts of the contributions owed each month and followed the formulas provided
9  for in the Agreement when calculating the liquidated damages. As the 20% provided for by the
10 CBAs is allowed under ERISA, the amount is consistent with the statute. Plaintiffs are entitled to
11 $12,850.74 in liquidated damages. *See id.* ¶ 10, Exh. B, ECF No. 25-2 at 7; Exh. C, ECF No. 25-2 at
12 9.

13 In sum, for contributions reported, but not paid, Plaintiffs are entitled to an award under 29
14 U.S.C. §§ 1132(g)(2)(A), (B) and (C) as follows:

|  |  |
|---|---|
| Unpaid Contributions: | $53,383.70 |
| Interest: | $5,477.31 |
| Liquidated Damages: | $12,850.74 |
| Sub Total: | $68,991.12 |

19 *See id.* ¶ 10.

20 **B. Late Contributions**

21 ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), provides that a court may award "such other
22 legal and equitable relief as the court deems appropriate." This relief may include interest and
23 liquidated damages on employee fringe benefit contributions that were paid, but paid late. *See*
24 *Northwest Adm'rs*, 104 F.3d at 257-58; *Idaho Plumbers*, 875 F.2d at 216-18.

25 As evidence submitted by Plaintiffs demonstrates, during the period May 2012 through July
26 2012, although Legg, Inc. paid the employee fringe benefit contributions as reported, it failed to pay
27 the employee fringe benefit contributions on time, i.e., prior to the 25th day of the month
28 immediately succeeding the month in which the employee's work was performed. *See* Hayner

C 13-01065 LB
ORDER RE DEFAULT JUDGMENT
11

Declaration ¶ 5. Liquidated damages on contributions that were paid, but were paid late, for the period May 2012 through July 2012 amount to $10,130.11 ($9,920.84 calculated at 20% liquidated damages after obtaining legal counsel and $209.20 calculated at 10% prior to the mater being referred to legal counsel) as calculated through January 2, 2014. *See id.* ¶ 10. Accordingly, Legg, Inc. and Mr. D'Orazio owe this amount as well.

**E. Attorney's Fees and Costs**

Plaintiffs also request attorney's fees and costs as follows: fees of $11,783.50 (26.0 hours at $205 per hour, totaling $5,330.00; 14.9 hours at $210 per hour, totaling $3,129.50; 27.7 hours at $120.00 per hour, totaling $3,324.00) and costs of $669.55. Russell Declaration, ECF No. 24 ¶ 10; Motion for Default Judgment, ECF No. 23 at 17. Plaintiffs also request an additional $1,060.00 (for an anticipated 4.0 hours at $205 per hour and 2 hours at $120 per hour). *Id.* ¶ 11. Incurred attorney's fees of $11,782.50 combined with anticipated fees amounts to a total of $12,843.50. An award for reasonable fees and costs is mandatory because there are unpaid contributions and the plan provides for reasonable fees and costs. *See Northwest Adm'rs*, 104 F.3d at 257-58. Specifically, the CBAs provide for reimbursement of attorneys' fees and costs, audit fees, and all other expenses incurred in connection with the collection of the delinquent contributions. Hayner Declaration ¶ 7, Ex. B.

The $669.55 costs are fees related to the filing of the complaint and the service of the complaint, and messenger service to the court for filing of documents. Russell Declaration, ECF No. 24 at 12. These are reasonable, and the court awards them.

To determine a reasonable attorney's fee award in cases such as this, courts use the lodestar method. *Grove v. Wells Fargo Financial Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). The court calculates a lodestar amount by multiplying the number of hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Id.*

*1. Reasonable Hourly Rate*

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The relevant community is the "forum in which the district court sits," which here is the Northern District of California. *Id.* The party requesting fees must produce satisfactory evidence – in addition to the attorney's own affidavits or declarations – showing the rates are in line with community rates. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). In establishing the reasonably hourly rate, the court may take into account : (1) the novelty and complexity of the issues; (2) the special skill and experiences of counsel; (3) the quality of representation; and (4) the results obtained. *See Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988).

In the Ninth Circuit, evidence of billing rates awarded in ERISA cases in the region must be considered. *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). Plaintiffs have submitted evidence showing that this court has found the market rates for partners to be between $385-$450 per hour and associates to be $225 per hour. *See Day v. SBC Disability Income Plan*, No. 06-1740, 2008 WL 2783482 at *2 (N.D. Cal. July 17, 2008) (determining that the attorney rate of $450 per hour was reasonable); *Trs. on Behalf of Teamsters Benefit Trust v. Casey's Office Moving Servs.*, No. 05-4157, 2007 WL 1031320 at *5 (N.D. Cal. Apr. 3, 2007) (determining that for a relatively simple trust collection $250 per hour was a reasonable attorney rate); *Bd. of Trs. of Boilermaker Vacation Trusts v. Skelly, Inc.,* 389 F. Supp. 2d 1222, 1227-28 (N.D. Cal. 2005) (determining an associate's rate of $225 per hour and a partner's rate of $385 per hour were reasonable rates); *May v. Metro. Life Ins. Co.*, No. 03-5056, 2005 WL 839291 at *4 (N.D. Cal. April 7, 2005) (approving reasonable rates for plaintiffs' attorneys at $350 and $395 per hour).

Here, Plaintiffs are only requesting the billing rates that are below the lodestar amount based on the prevailing market rate in the relevant community in similar ERSIA actions. The billing rates charged per hour were $205-$215 per hour for attorneys and $120 per hour for paralegal. Russell Declaration ¶ 10. Accordingly, the court finds the hourly rates of Plaintiffs' counsel reasonable.

*2. Reasonable Hours Expended*

Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party requesting fees must provide detailed time

1 records documenting the task completed and the time spent. *See Hensley*, 461 U.S. at 434; *McCown*,
2 565 F.3d at 1102; *Welch*, 480 F.3d at 945-46.

3     Here, the total number of hours of 68.6, from December 12, 2012 through January 15, 2014,
4 includes drafting the complaint filed, Plaintiffs' Request to Continue Case Management Conference,
5 Request for Default, and the Motion for Default Judgment. Russell Declaration ¶ 10. In addition
6 Plaintiffs' counsel conducted activities consisting of: conferences, communications, and
7 correspondence with Plaintiffs, the Trust Funds (and the Trust Funds' administrator), and general
8 contractors. *Id.* The court finds these billings to be reasonable and in line with the timeline of this
9 action and were necessary for its prosecution.

10     Plaintiffs also request $1,060.00 for anticipated work associated with appearing at the hearing,
11 finalizing their motion, attending the hearing on that motion, and other follow-up work. But
12 Plaintiffs do not specify the unbilled work and the court invited the Plaintiffs to appear at the hearing
13 on their motion by telephone. Accordingly, the court recommends that Plaintiffs' request for the
14 additional $1.060 be denied. *See Bd. of Trs. in their capacities as Trs. of Laborers Health and*
15 *Welfare Trust Fund for Northern California v. Geotech Const., Inc.*, No. C 07-4783 BZ, 2008 WL
16 3496474, at *3 (N.D. Cal. July 18, 2008) (recommending that a similar request not be granted).
17 Applying the hourly rates to the recommended hours, the court ultimately recommends that
18 Plaintiffs be awarded $11,783.50 in fees and $669.55 in costs.

### CONCLUSION

20    Based on the foregoing, the court **RECOMMENDS** that the district court **GRANT** Plaintiffs'
21 motion for default judgment and enter default judgment against Legg, Inc. and Mr. D'Orazio in the
22 amount of $94,294.91, broken down as follows:

23 • For the Reported, Not Paid Contributions, Interest, and Liquidated Damages, $71,711.75.
24 • For the Late Contributions, $10,130.11.
25 • For attorney's fees and costs, $11,783.50 in fees and $669.55 in costs.
26 **IT IS SO ORDERED.**
27 Dated: March 6, 2014

    LAUREL BEELER
28     United States Magistrate Judge

C 13-01065 LB
ORDER RE DEFAULT JUDGMENT
14